UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHAWN BEVERS, | Case No.: 2:09-cv-002015-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#81; Counter Motion for Summary Judgment–#84) |
| D.R. HORTON, INC.; DHI MORTGAGE COMPANY, LTD.; EMC MORTGAGE CORPORATION; and ONEWEST BANK as successor in interest to INDYMAC BANK FSB, | |
| Defendants. | |

Before the Court is Defendants D.R. Horton, Inc. and DHI Mortgage Company, Ltd.'s **Motion for Summary Judgment** (#81), filed September 22, 2010. The Court has also considered Plaintiff Shawn Bevers' Opposition (#83), filed October 18, 2010, and Defendants' Reply (#88), filed November 4, 2010.

Also before the Court is Bevers' **Counter Motion for Summary Judgment** (#84), filed October 18, 2010. The Court has also considered Defendants' Opposition (#89), filed November 4, 2010. Bevers did not reply.

/

/

# BACKGROUND

In late 2006, Bevers purchased the real property located at 8225 Fair Falls Lane in Las Vegas, Nevada. Bevers purchased this property by executing two mortgage loans prepared by D.R. Horton and its preferred lender, DHI Mortgage ("DHI"). Bevers alleges D.R. Horton and DHI misled him regarding a number of the terms of these loans.

In June 2009, Bevers defaulted on his mortgage obligations. Defendants subsequently filed a Notice of Trustee's Sale in the Clark County Recorder's Office and scheduled a foreclosure sale for October 14. On September 8, Bevers filed suit in the Eighth Judicial District Court of the State of Nevada naming D.R. Horton, DHI, EMC Mortgage Corporation ("EMC") and OneWest as Defendants. In his complaint, Bevers alleged the following claims: (1) fraud in the inducement (against all Defendants); (2) racketeering (against D.R. Horton and DHI); (3) negligence (against DHI); (4) breach of fiduciary duty (against DHI); (5) deceptive trade practices (against D.R. Horton and DHI); and (6) quiet title (against EMC and OneWest).

On October 16, 2009, D.R. Horton and DHI removed the case to this Court based on the diversity of the parties. (Dkt. #1, Pet. for Rem.) On November 19, the Court signed a stipulation by both parties to dismiss EMC from this case. (Dkt. #28, Order.) On February 11, 2010, the Court partially granted and denied D.R. Horton and DHI's Motion to Dismiss (#6). (Dkt. #39, Order.) The Court found that Bevers stated valid claims for fraud in the inducement and violation of Nevada's Deceptive Trade Practices Act, but dismissed Bevers' claims for racketeering, negligence, and breach of fiduciary duty. The Court subsequently granted OneWest Bank's Motion to Dismiss (#41) leaving D.R. Horton and DHI as the only remaining defendants. (Dkt. #52, Order, June 2, 2010.) Now before the Court are the parties' cross motions for summary judgment. For the reasons stated below, the Court grants Defendants' motion, denies Bevers' motion, and enters summary judgment for the Defendants.

/

/

**DISCUSSION**

**I.     Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

AO 72
(Rev. 8/82)

*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

**II.     Defendant's Motion for Summary Judgment**

      **A.     Fraud in the Inducement**

Under Nevada law, a claim for fraud in the inducement requires a party to prove each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or knowledge that the defendant had an insufficient basis for making the representation); (3) intent to induce the plaintiff to consent to the contract's formation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1017 (Nev. 2004). "Where an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper." *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (citing *Sims v. General Telephone & Electric*, 815 P.2d 151 (1991)).

Bevers fails to show triable issues of fact because Bevers cannot show an actionable false representation, a critical element for a fraud in the inducement claim. A statement is only an actionable representation if the statement concerns an existing or past fact. *Id*. A statement is not actionable if it is merely an expression of opinion, an estimate of value, or "mere puffery." *Id*. at 592. A promise of future performance can only be actionably as fraud if made without the present intent to perform. *Anderson v. Reynolds*, 588 F.Supp. 814, 818 (D. Nev. 1984). Here, the uncontroverted evidence shows that the allegedly false statements a DHI employee, Towns, made on behalf of the Defendants were either true or at the very least, Bevers brings no evidence showing that they were false. Without evidence disputing the veracity of the allegedly fraudulent statements, and especially where uncontroverted evidence shows the statements were true, the Court must grant summary judgment on the fraudulent inducement claim.

4

### 1. Earnest Money Claim

Bevers claims that Towns, the DHI employee whose statements are at issue, fraudulently induced him into the mortgage with DHI by telling him that he "would lose his earnest money deposit if he didn't accept the deal." (Dkt. #1, Pet. for Rem. Ex. C, Compl. ¶ 12.) However, Bevers elaborated and testified in his deposition that he was told "If I didn't take DHI's loan and backed out of the house, I wouldn't receive my earnest money." (Dkt. #81, Mot. Ex. A, Bevers Dep. 97:16–23.) Stating that Bevers would lose the earnest money if he backed out of buying the house is fundamentally different than stating that he would lose the earnest money if he didn't take the offered loan. For one, it was a true statement. Had Bevers backed out of the house and failed to close escrow, the contract that Bevers signed with D.R. Horton would require that he lose his earnest money deposit. (*Id.*, Ex. C, Contract ¶ 17.) Bevers does not dispute this in his response and counter motion, thereby conceding the point.

### 2. Loss of Incentives Claim

Bevers also alleges that Towns fraudulently told him that he would lose his closing cost incentives if he did not use DHI. (Dkt. #1, Compl. ¶ 14.) However, it is undisputed that the Contract Bevers signed with D.R. Horton entitled him to discounted settlement services only if he used DHI. (Dkt. #81, Ex. C, Contract ¶ 4.) Therefore, Towns statement was not false as required for fraud. Bevers fails to meet the prima facie requirements even in the light most favorable because the statements were true.

### 3. Flooring Upgrades

Bevers also contends that Towns fraudulently told him that he "would lose the $18,000 flooring upgrade that they had been offered when they first looked at model homes" if they didn't use DHI. (Dkt. #1, Compl. ¶ 14.) Again, Bevers own deposition testimony controverts his allegations. All that Towns told Bevers was that he would have to pay for the flooring upgrade if he didn't use DHI. (Dkt. #81, Bevers Dep. 102:25–103:7l; 227:3–15.) Further, Bevers testified that he doesn't know whether the statement was true or not. (*Id.*) Bevers then presents no

AO 72
(Rev. 8/82)

evidence that this was a false statement as required to show fraud and as required to meet his burden to overcome a motion for summary judgment. Instead, the contract Bevers signed shows that he would have lost a special price reduction for the flooring upgrade if he used a lender other than DHI. (Dkt. #81, Ex. C, Contract ¶ Builders Concession (MCW 00525).) Because the statement was true, it is not actionable.

### 4. Refinancing

Bevers also claims that Towns promised to refinance his loan in six months. (Dkt. #1, Compl. ¶ 21.) However, Bevers testified that Towns did not promise anything but merely spoke of refinancing in general terms. (Dkt. #81, Bevers Dep. 96:1–10.) As a matter of law, this represents no more than conjecture on Towns' part and is not an actionable false statement but mere sales talk or "puffery." Further, Bevers never alleges or provides evidence that he went back to DHI to refinance, much less that he was denied refinancing. Without more, Bevers does not meet his burden to overcome a motion for summary judgment and cannot support a claim for fraudulent inducement.

### 5. Missing Loan Terms and Remaining Fraud Claims

Bevers also claims that material terms of the loan were omitted when he signed it, such as the interest rate and monthly payment. However, Bevers own testimony again contradicts his claim. Instead of supporting his claim, Bevers essentially admits that he simply did not read the loan agreement before signing it or prior to closing. (*See, e.g.*, Dkt. #81, Bevers Dep. 145:7–25; 146:1–2.) Bevers does not respond by showing the Court any evidence that material terms were omitted from the loan agreement. Therefore, Bevers has not his burden to show triable issues of material fact and does not provide the basis for a fraud claim.

In sum, Bevers does not meet his burden by contradicting any of the Defendants' arguments and showing a material factual dispute. He does not show why the statements that he claims fraudulently induced him into the mortgage were fraudulent even though Defendant's met there burden by showing that the statements were true. Without providing some admissible

AO 72
(Rev. 8/82)

evidence to show that a material factual dispute exists as to any of his fraud claims, summary judgment is appropriate. *Bhan*, 929 F.2d at 1409. Therefore, the Court grants Defendants' motion as to the fraudulent inducement claim.

**B.     Violations of Nevada's Deceptive Trade Practices Statute**

Bevers asserts that six separate statements and acts attributable to Defendants violated Nevada Revised Statutes Chapter 598, the Nevada Deceptive Trade Practices Act ("NDTPA"). As shown below, there are no genuine issues of material fact as to these claims and the Court grants the Motion for Summary Judgement as to the NDTPA claims.

**1.     Disparagement**

Bevers alleges that Towns disparaged another loan offer and told Bevers that the loan would never be funded. NRS § 598.0915(8) defines a statement that "[d]isparages the goods, services or business of another by false or misleading representation of fact" as a deceptive trade practice. However, in his deposition, Bevers testified that Towns did not disparage the other loan offer to Bevers but instead Bevers believes that Towns disparaged the offer to the other loan officer directly. Also, the offer was not an actual offer to loan money, but an estimate of what the loan officer might be able to obtain if Bevers applied for loan, which he never did. Disparaging the offer to the other loan officer without Bevers hearing it himself is not a deceptive trade practice. Further, Bevers' testimony concerning the alleged statement to the other loan officer is inadmissible hearsay and therefore cannot be considered in a motion for summary judgment. *Bhan*, 929 F.2d at 1409 (holding that only admissible evidence is properly considered on a motion for summary judgement). Finally, Bevers does not dispute Defendants argument and therefore does not meet his burden to overcome a motion for summary judgment. Therefore, the Court grants summary judgment on this claim.

**2.     False Representations**

Bevers also alleges that DHI made false representations violating the NDTPA but then merely refers to the general allegations of the complaint. As explained above, the statements

7

AO 72
(Rev. 8/82)

that Bevers initially alleged were false were either actually true or at least unsupported as false by Bevers own testimony or any other evidence. Therefore this claim fails as a matter of law and the Court grants summary judgment accordingly.

### 3. Bait and Switch

Bevers alleges that he was initially told that he could get one type of loan with a payment of between $1,400 and $1,500 but that this was later adjusted to $3,000. He then rejected that offer but accepted a lower one only to discover that it was the same offer of $3,000 monthly payments. The only difference was that the tax and insurance portion of the payments had been subtracted out. NRS § 598.0917(6) states that it is illegal to engage in "bait and switch" advertising which includes "[a]ccepting a deposit for the goods or services for sale or lease and subsequently switching the purchase order or lease to higher priced goods or services." However, in his deposition, Bevers testified that when he initially met with Towns he was told that he couldn't get a loan with payments between $1,400–1,500, but that he might be able to if he improved his credit. (Dkt. #81, Bevers Dep. 224:25–225:14.) This testimony does not support his allegation of an initial advertising or offer to sell a good or service at a particular price as Bevers initially claimed, rather a hope that he would obtain that price in the future. Further, nowhere does Bevers allege that the price of the home changed, or that Defendants switched the goods or services he sought to "higher priced goods or services." NRS § 598.0917(6). He purchased the same house he initially sought and eventually obtained a loan, despite the fact that he did not originally qualify for one. Although Bevers may have been confused and Towns could have been more helpful, this was not a bait and switch tactic as contemplated by NRS § 598.0917(6).

### 4. Solicitation at Home at an Inappropriate Hour

Bevers next claims that Towns solicited him at his home after 9 p.m. on Christmas Eve. NRS § 598.0918(3) makes soliciting "a person by telephone at his or her residence between 8 p.m. and 9 a.m." a deceptive trade practice. In his deposition, Bevers acknowledged that multiple portions of this allegation were faulty. First, the events did not take place on Christmas

Eve, but on December 21. Second, they did not take place at Bevers' residence, but at his parents' home. Town knew Bevers' parents address because Bevers gave it to him, and Bevers also acknowledged that he allowed Towns to come over with loan documents. Third, the two already had a business relationship and Bevers had agreed to the communications and meeting. Finally, Bevers does not dispute Defendants' facts or argument and thereby does not meet his burden to overcome a motion for summary judgment. Therefore, the Court finds summary judgment appropriate on this claim.

### 5. Misrepresentation of Legal Rights, Obligations, or Remedies

Bevers alleges that Defendants knowingly misrepresented the legal rights, obligations, or remedies of the parties to the transaction violating NRS § 598.092(8). First, Bevers argues that when a D.R. Horton employee, Miss Warner, prequalified him for a $400,000 loan, it meant that he was preapproved and could actually afford the loan, or at least D.R. Horton represented that he could afford the loan. Nothing about prequalification for a particular laon amount implicates "legal rights, obligations, or remedies" as set forth in NRS § 598.092(8). Further, a lender does not owe a duty to ensure that a borrower can afford a home. *See Renteria v. U.S.*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) ("The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's. . . . [Plaintiffs] had to rely on their own judgment and risk assessment to determine whether or not to accept the loan.") Defendants merely prequalified Bevers for a loan for their own purposes. Defendants never stated that Bevers could afford the loan, he only assumed that he could. Further, Bevers does not dispute Defendants contentions or facts with citations in his brief, thereby ceding the point. For these reasons, Defendants are entitled to summary judgment on this claim.

### 6. Coercion, Duress, or Intimidation

Finally, Bevers alleges that Towns used coercion, duress, or intimidation in the transaction violating NRS § 598.0923. However, in his deposition, Bevers did not testify to any

AO 72
(Rev. 8/82)

coercion, duress, or intimidation. At most, Bevers testified that Towns acted annoyed at Bevers stating he would look for a loan elsewhere and made accurate statements about the incentives Bevers stood to lose by using a different mortgage company. This does not amount to coercion, duress, or intimidation. Therefore, the Court grants summary judgment on this claim.

### III. Bevers' Counter-motion

Bevers' Counter-motion for Summary Judgment (#84) does not meet the requirements for a summary judgment motion and, therefore, the Court denies the motion in its entirety. First, Bevers' motion cites no law and therefore fails to provide points and authorities as required by Local Rule 7-2 and is deficient as a matter of law for failing to show genuine issues of material fact. As part of this, the motion fails to address the law and the facts that Bevers has to prove for his claims such as the fraudulent inducement requirement that Defendants made false statements. Finally, Bevers' counsel submitted a declaration that purports, in essence, to testify to the content of Towns' testimony since Towns' deposition was not yet available when Bevers' counsel filed the motion. This does not suffice as properly authenticated deposition testimony. However, even if the Court were to use this declaration, it does not create a material factual dispute because according to counsel Towns' supposedly didn't remember anything of the disputed events and therefore doesn't contradict (or support) either parties' contentions.

In sum, Bevers does not demonstrate that a material factual dispute exists as to any of his claims and doesn't really dispute any of Defendants factual or legal contentions. Bevers merely reiterated his initial allegations, despite giving contradictory testimony in his deposition. Further, he does not include any citations to law whatsoever but merely relies on his initial allegations that Defendants' conduct was profit driven and amounted to predatory lending. This is not enough to receive summary judgment or to overcome Defendants' motion for summary judgment. Accordingly, the Court grants summary judgment for Defendants as to all claims and closes this case.

/

AO 72
(Rev. 8/82)

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants D.R. Horton and DHI Mortgage Company's Motion for Summary Judgment (#81) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Shawn Bevers Cross Motion for Summary Judgment (#84) is DENIED. The Clerk of the Court is directed to close this case.

Dated: January 26, 2011.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72
(Rev. 8/82)